# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
May 14, 2013 Session

## STATE OF TENNESSEE v. TERRY MICHAEL ALLEN

**Appeal from the Circuit Court for Hickman County**
**No. 11-5072CR      Derek Smith, Judge**

---

**No. M2012-01968-CCA-R3-CD - Filed June 19, 2013**

---

The Defendant-Appellant, Terry Michael Allen, was indicted by a Hickman County Grand Jury for delivery of a Schedule III controlled substance, a Class D felony. See T.C.A. § 39-17-417 (2010). Pursuant to his plea agreement, Allen entered an open guilty plea to the charged offense in exchange for a sentence of two years as a Range I, standard offender, with the manner of service of the sentence to be determined by the trial court. The trial court subsequently ordered Allen to serve his sentence of two years in the Tennessee Department of Correction. On appeal, Allen argues that the trial court erred in denying him a sentence of full probation or an alternative sentence. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROGER A. PAGE, JJ., joined.

Michael J. Flanagan, Nashville, Tennessee, for the Defendant-Appellant, Terry Michael Allen.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Senior Counsel; Kim R. Helper, District Attorney General; and Sean B. Duddy, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Facts.** We initially note that Allen did not include the transcript from the May 9, 2012 plea submission hearing in the record on appeal. However, we were able to glean the facts regarding the aforementioned offense from the indictment, sentencing hearing transcript, and presentence investigation report. As we will explain, this record is sufficient for a meaningful

review of the issue on appeal, despite the absence of the transcript from the plea submission hearing.

The presentence investigation report included the "official version" of Allen's offense:

[The defendant] was arrested on 6/29/11 by the 21st Judicial Drug Task Force and [was] charged with Schedule III drugs: Manuf[acture]/Del[ivery]/ Sell/Poss[ession]. . . .

On 1/18/11, Agents with the 21st Judicial District met with a cooperating individual (CI) to prepare for a controlled purchase of Lortab from the defendant[, Terry Allen]. CI and defendant's son, William Allen, had spoken earlier in the day to arrange the sale. However, William Allen[] text[ed] the CI later in the day and stated that he would not be home when the CI arrived to purchase the Lortab but that his father, Terry Allen[,] would complete the sale for him. CI met with Drug Task Force agents and was provided recorded Task Force money for the purchase. CI arrived at residence located at 6115 Woodland Park Circle, Nunnelly, Hickman Co[.], TN[,] and was let into [the] residence by defendant. CI asked defendant if [he] had the Lortab[,] and defendant responded[,] "Yeah." CI counted out $80 and handed it to defendant[,] and defendant handed CI the pills. CI then left the residence.

Allen made the following statement in the presentence report: "My son made a deal to sale [sic] Lortabs to [a] girl and asked me to give them to her when she came because he was out doing something else. I agreed and went to jail for it."

The presentence report also included the following statement from the 21st Judicial Drug Task Force regarding Allen's offense:

On Tuesday, January 18, 2011, Agents Ashmore, Jones, Aydelott and Wheeler with the 21st Judicial District Drug Task Force met with CI 10HCI005, hereinafter referred to as CI, to prepare for a controlled purchase of Lortab from Terry Allen. The CI spoke with William Allen earlier in the day and arranged the transaction. However, William Allen later texted the CI and said he was out of town and that his father, Terry Allen, was home and would complete the sale.

At 4:55 pm, Agent Ashmore searched the CI for contraband and money, with none being found, before placing a transmitter and recorder on the CI to monitor any conversation during the controlled drug purchase[.] Agent

Wheeler searched the CI's vehicle for contraband and found nothing in the CI's vehicle. Agent Ashmore issued the CI $80.00 in Drug Task Force money to purchase the drugs from Terry Allen.

At 5:12 pm, the CI left the meeting place with Agents Ashmore, Aydelott, and Wheeler following in Agent Ashmore's vehicle. Agent Jones followed in his vehicle.

At 5:21 pm, the CI arrived at Allen's residence located at 6115 Woodland Park Circle in Nunnelly, Hickman County, Tennessee. The CI exited [her] vehicle, approached the front door, and knocked. After knocking, a male instructed the CI to come inside the residence. Once inside, the CI asked if he was Terry[,] and the male shook his head and acknowledged that he was according to the CI. Allen apologized to the CI because he was asleep and did not hear [her] at the door. The CI told Allen, "William said you got some tab?" Allen replied, "Yeah. I'll get those for you." The CI told Allen that William called [her to tell her] he was in Dickson and that he (Terry Allen) would sell them. Allen confirmed the statement by saying, "Yeah." The CI counted the $80 [she was] issued and handed it to Allen. Allen handed the pills to the CI[,] and the CI commented on the pills being pink. The CI asked if William had anymore[,] and Allen responded[,] "Probably."

At 5:24 pm, the CI left the residence and traveled to a prearranged location led by Agent Jones and followed by Agents Ashmore, Aydelott, and Wheeler.

At 5:34 pm, the CI arrived back at the meeting place along with Agents Ashmore, Jones, Aydelott, and Wheeler. Agent Ashmore took possession of ten pink pills marked with V 3600. Agent Ashmore conducted a postamble [sic] prior to concluding the recording. Agent Ashmore conducted another search of the CI for contraband and money and found none. Agents Jones and Aydelott searched the CI's vehicle and found nothing as well.

Note: The transaction was videoed by the CI, but due to the low light inside the residence, the quality is fair.

**Sentencing Hearing.** At the July 18, 2012 sentencing hearing, the State admitted the presentence investigation report, which showed that Allen had received at least twenty-five convictions from 1979 to 2009. His criminal record included one felony conviction for burglary in the second degree and numerous misdemeanor convictions, including four

convictions for driving under the influence, six convictions for driving on a revoked license, three convictions for driving on a suspended license, six convictions for writing worthless checks, as well as convictions for public intoxication, simple assault, possession of marijuana, reckless driving, and damage to private property. The report also showed that Allen had been placed on probation several times in the past and that his probation had been revoked at least three times.

Allen, age fifty-two, was the only witness to offer testimony at the sentencing hearing. He testified that he was unemployed and received disability benefits because of a 2007 neck injury he received while lifting steel at his job. Allen said that he had been taking pain medication since his injury.

Allen admitted that he entered a guilty plea to selling the pills involved in this case. He also admitted that he was addicted to pain medication. He claimed that his son had told him a girl he knew was "real sick" because of her withdrawal from drugs and requested that he "give her a little package thing," which he did. Allen said he wanted to go to jail rather than have his son go to jail for this crime. He claimed that this was the first and only time he had sold drugs and that he had committed the crime because he felt sorry for the girl.

Allen admitted that he had a lengthy criminal record consisting mainly of misdemeanor offenses and one felony for burglary that he received in 1980. Although he acknowledged that he had a prior conviction for simple possession of marijuana, he claimed the marijuana belonged to another person and that he had been charged because he was that person's supervisor on a job site.

Allen said that if the court granted him probation, he would follow any conditions imposed by the trial court, including an alcohol and drug assessment and rehabilitation treatment. He acknowledged that he needed treatment for his addiction and stated that he had recently been accepted into a Suboxone clinic to help him with his addiction to pain medication. Allen stated that if the court gave him a drug test today, he would only test positive for pain medication. He also said he had received rehabilitative treatment for his alcohol addiction several years ago.

On cross-examination, Allen admitted that he had been convicted of driving under the influence of alcohol four times but asserted that he had not consumed alcohol in the last five years. He also admitted that he had been convicted of simple assault but did not recall the details of that offense. In addition, Allen acknowledged that he had received several convictions for writing worthless checks and that he had been to jail eight or nine times. He stated that he knew at the time he delivered the pills to the girl that he was committing a criminal offense that could result in jail time. Although Allen admitted that he was addicted

to pain medication, he said he had not been to a narcotics anonymous meeting because he was still taking the medication. He said that at the time of his arrest he was consuming 180 milligrams of morphine and four Percocets a day and that the last time he had received a prescription for pain medication was on the Monday prior to the sentencing hearing. Allen asserted that his doctor provided him with this prescription so that he would not go into drug withdrawal prior to being accepted into the Suboxone clinic for treatment.

The trial court found that no mitigating factors were applicable to this case. It also found that enhancement factor (1), that the defendant had a history of criminal convictions or criminal behavior, in addition to that necessary to establish her range, and factor (2), that he was the leader in the commission of an offense involving two or more criminal actors, applied to his conviction in this case. See id. § 40-35-114(1), (2) (Supp. 2010). Regarding the application of these factors, the court noted Allen's extensive criminal history and explained that although Allen's son set up the drug transaction, Allen was the one who "did the hand to hand [exchange]."

The trial court also determined that Allen was not a proper candidate for alternative sentencing. First, he found that "[c]onfinement [was] necessary to protect society by restraining a defendant who ha[d] a long history of criminal conduct[.]" Id. § 40-35-103(1)(A) (Supp. 2010). The court specifically noted Allen's lengthy criminal history, which included convictions for burglary, driving on a suspended license, driving on a revoked license, driving under the influence of an intoxicant, writing worthless checks, and public intoxication. After reviewing the presentence investigation report, the court also found that "[m]easures less restrictive than confinement [had] frequently or recently been applied unsuccessfully to the defendant[.]" Id. § 40-35-103(1) (C) (Supp. 2010). In addition, the trial court determined that Allen was not a good candidate for probation, stating: "Particularly, I think protect[ing] society is particularly important in this case because of the prior history of driving under the influence. I have no guarantee that you're not driving right now under the influence of your pain medication because you have no qualms about driving on a revoked license." Later, the court remarked, "[I]f I were to put you on probation, . . . I have no guarantee that you're not going to be driving under the influence of those pain meds [sic]." The court also stated its concern about Allen's failure to attend Narcotics Anonymous meetings thus far. At the conclusion of the hearing, the trial court ordered Allen to serve his two-year sentence in the Tennessee Department of Correction.

## ANALYSIS

As we previously noted, Allen did not include the transcript from the plea submission hearing in the record on appeal. "[W]hen a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis

whether the record is sufficient for a meaningful review under the standard adopted in Bise." State v. Caudle, 388 S.W.3d 273, 279 (Tenn. 2012); see State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). The Tennessee Supreme Court, noting appellate courts' authority to supplement the record pursuant to Tennessee Rule of Appellate Procedure 24(e), stated that it did "not mean to suggest that the Court of Criminal Appeals must or should order supplementation of the record in every case where the appellant fails to provide a transcript of the hearing on a guilty plea." Id. Instead, "[s]upplementation may be considered on a case-by-case basis and should be ordered only if the record is otherwise inadequate to conduct a meaningful appellate review on the merits of the sentencing decision." Id. The court continued, "If, however, the record is adequate for a meaningful review, the appellate court may review the merits of the sentencing decision with a presumption that the missing transcript would support the ruling of the trial court." Id. (citing State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991)). Ultimately, the court concluded that "the mere fact that the transcript of the submissions hearing was not made a part of the record on appeal should not preclude review under the standard adopted in Bise." Id. Because we conclude that the record is sufficient for meaningful review under the standard in Bise, we will address the issue presented on appeal.

Allen argues that the trial court erred in failing to grant him a sentence of full probation or an alternative sentence. Specifically, he claims that the record does not support the court's denial of a sentence of full probation and that the court improperly denied him a probationary sentence based on his criminal history and the court's fear, unsupported by the evidence, that he would drive under the influence of his pain medication. He also claims that court failed to consider his potential for rehabilitation and failed to consider whether a sentence of full probation would unduly depreciate the seriousness of the offense or would provide an effective deterrent to others. Alternatively, Allen argues that the trial court erred in denying him an alternative sentence because it made no findings on this issue. The State responds that the trial court properly considered the relevant factors and imposed a sentence consistent with the purposes and principles of the sentencing act. We agree with the State.

Pursuant to the 2005 amendments to the sentencing act, a trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Id. § 40-35-210(b) (Supp. 2010). The defendant has the burden of showing the impropriety of the sentence on appeal. Id. § 40-35-401(d) (Supp. 2010), Sentencing Comm'n Comments.

Because of the broad discretion given to trial courts by the 2005 amendments to the sentencing act, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." Bise, 380 S.W.3d at 706. Moreover, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Id. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." Id. Therefore, this court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. This standard of review also applies to a trial court's decision regarding "probation or any other alternative sentence." Caudle, 388 S.W.3d at 278-79. Because the record shows that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing a sentence of confinement, Allen has failed "to either establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded" to the trial court's sentence in this case. Id. at 280.

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Tennessee Code Annotated section 40-35-102(6)(A) (Supp. 2010) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" However, a trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). T.C.A. § 40-35-102(6)(D) (Supp. 2010). A trial court should consider the following when determining whether there is "evidence to the contrary" indicating that an individual should not receive alternative sentencing:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C); see State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

We note that the trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). The defendant has the burden of establishing suitability for full probation, even if the defendant is considered a favorable candidate for alternative sentencing. See id. (citing T.C.A. § 40-35-303(b)).

Allen argues that the trial court erred in failing to grant him a sentence of full probation. We note that Allen was eligible for probation because his sentence was ten years or less and the offense for which he was sentenced was not specifically excluded by statute. See T.C.A. § 40-35-303(a) (Supp. 2010). Although the trial court shall automatically consider probation as a sentencing alternative for eligible defendants, the defendant bears the burden of proving his or her suitability for probation. Id. § 40-35-303(b) (Supp. 2010). In addition, "the defendant is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b) (Supp. 2010), Sentencing Comm'n Comments. Rather, the defendant must demonstrate that probation would serve "the ends of justice and the best interests of both the public and the defendant." State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citations omitted).

When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. See State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)). In addition, the principles of sentencing require the sentence to be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. § 40-35-103(2), (4) (Supp. 2010). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed[,]" and "[t]he length of a term of probation may reflect the

length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" Id. § 40-35-103(5) (Supp. 2010).

Here, the trial court properly denied alternative sentencing and imposed a sentence of confinement after determining that Allen had a long history of criminal conduct and that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to him. Id. § 40-35-103(1)(A), (C). The presentence report showed that Allen had an extensive criminal history consisting of one felony and at least twenty-five misdemeanors. The report also showed that Allen had been placed on probation several times in the past and that his probation had been revoked at least three times. In determining the appropriate sentence, the court noted that Allen was not a good candidate for probation, stating, "[I]f I were to put you on probation, . . . I have no guarantee that you're not going to be driving under the influence of those pain meds [sic]." Although Allen argues that the court erred in denying probation based on its unsupported fear that he would drive while under the influence of his pain medication, we conclude that the court relied on a number of factors in denying probation, including his criminal history, his inability to abide by probationary sentences in the past, and his current and untreated addiction to pain medication. We also conclude that the court's fear that Allen might drive while under the influence was reasonable, given that Allen had admitted he was currently addicted to pain medication and that his criminal history included four convictions for driving under the influence of an intoxicant. Moreover, we conclude that the court properly considered this issue as it evaluated Allen's criminal record, his background and social history, his present condition, the deterrent affect of a probationary sentence on him, and the interests of Allen and the public, all of which are relevant factors for the court to consider before imposing a sentence of probation. See Kendrick, 10 S.W.3d at 656. Despite Allen's arguments to the contrary, the record shows that the trial court made the appropriate findings in denying all forms of alternative sentencing. Because the record shows that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing a sentence of confinement, we uphold Allen's sentence of two years in the Tennessee Department of Correction. See Caudle, 388 S.W.3d at 280. The trial court's judgment is affirmed.

## CONCLUSION

Upon review, we affirm the trial court's judgment.

_____
CAMILLE R. McMULLEN, JUDGE